IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **CITY OF AUSTIN**, *et al.*, § § § *Plaintiffs*, § § v. § § **KINDER MORGAN TEXAS** § **PIPELINE, LLC**, *et al.*, § § § *Defendants*. § | Case No. 1:20-cv-00138-RP |

## DEFENDANTS KINDER MORGAN TEXAS PIPELINE, LLC AND PERMIAN HIGHWAY PIPELINE, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR EMERGENCY HEARING

Minutes before the close of business on Friday, February 7, 2020, Plaintiffs filed and served a 54-page Application for Preliminary Injunction and supporting Memorandum, along with eight witness declarations and other exhibits. This occurs in a lawsuit that is but the latest in a series of cases filed in Austin by an overlapping set of complainants under a variety of legal theories, all aimed at derailing the Permian Highway Pipeline.

Now, after serving a voluminous Application for Preliminary Injunction supported by a number of statements and exhibits, Plaintiffs seek a "TRO-like" expedited hearing on their Application within the next few days—before Defendants' Opposition is even due. If granted, this request would materially prejudice Defendants' ability to respond to the Application by depriving them of adequate time to mount a defense and response to the arguments, authorities and evidence in Plaintiffs' briefing.

Further, Plaintiffs' Application amounts to an end-run around expert federal agencies that have, or will have, completed a comprehensive regulatory process in full compliance with an array

1

of environmental laws relevant to construction of the pipeline, including the Endangered Species Act. Yet, as far as Defendants are aware, Plaintiffs have not served the government, despite the fact that the premise of their Application is that those federal authorizations and reviews are unlawful, that Defendants do not have the benefit of the decisions made by the federal agencies, and that, therefore, Defendants are violating environmental laws under which the federal agencies made the decisions to which Plaintiffs now object. It is fundamentally unfair for Plaintiffs to attempt to deprive Defendants of the benefit of a federal process on which they relied without engaging the federal agencies themselves in resolution of Plaintiffs' claims that those agencies' actions are unlawful.

The relief that Plaintiffs seek in their Application would indefinitely delay the completion of this $2 billion pipeline and cost Defendants hundreds of millions of dollars in losses and added costs. Given such dire consequences, Plaintiffs should not be permitted to rush Defendants to the courthouse without a full and adequate opportunity for briefing, factual development, and preparation.

*The Permian Highway Pipeline*

Elements of this ongoing saga will be familiar to the Court.[1] Defendants Permian Highway Pipeline, LLC ("PHP") and Kinder Morgan Texas Pipeline ("KMTP") are in the midst of constructing a 430-mile, $2 billion natural gas pipeline in Texas. Since July 2018, PHP has worked closely with the U.S. Army Corps of Engineers ("Corps") and later the U.S. Fish & Wildlife Service ("Service"), among others, to secure the necessary permits and authorizations to build the pipeline. PHP has complied with every directive of those federal agencies, has obtained or is

---

[1] *Permian Highway Pipeline, LLC et al. v. City of Kyle*, No. 19-cv-00734 (W.D. Tex. 2019) (Pitman, J.); *Pence, et al. v. Permian Highway Pipeline, LLC*, No. 20-cv-00088 (W.D. Tex. 2020) (Pitman, J.).

2

obtaining every required state and federal permit and authorization after extensive environmental review, and is adhering to the same regulatory protocol followed by the Service and Corps in connection with pipelines all over Texas and throughout the United States.

The PHP project has reached the point where it must pass through four counties of concern to Plaintiffs with potential golden-cheeked warbler habitat. On February 3, 2020, the Service issued a corrected Biological Opinion, which was first issued January 31, 2020, (Exhibit "A" hereto), which concluded that minimal direct impact to those potential habitats will occur if right-of-way clearance work is completed in those counties prior to the warblers' migration back to Texas from Central/South America as soon as the month of March. Exhibit A at 47-49. Accordingly, upon receipt of authorization from the Corps, PHP may move forward with the clearance work in those counties without risk of violating the Endangered Species Act.[2] This work should take two to three weeks. As Plaintiffs state, that authorization from the Corps is expected soon, but it has *not* been issued yet and PHP has not undertaken, and will not undertake, any clearing work in the identified warbler habitat until it has been.

PHP faces a tight window to complete the clearance work as directed by the Service, but believes it can do so by commencing the clearance work promptly upon receipt of the Corps' authorization.[3] If the clearance work is not completed in the time frame identified by the Service,

---

[2] As Defendants will explain in greater deal in their Opposition, Plaintiffs' exaggerated explanation of habitat impacts, and corresponding impact to the golden-cheeked warbler, is wrong. Defendants will clear 282 non-contiguous acres of potential warbler habitat out of an estimated 3.9 million acres in central Texas. The habitat is of varying levels of "suitability" for the warbler and is already fragmented. Exhibit A at 47-48.

[3] Plaintiffs' claim—that PHP requires a different type of authorization under the Endangered Species Act—is unfounded in a variety of fundamental legal ways, as Defendants will demonstrate in their Opposition. However, for this purpose it is worth noting that the type of permit that Plaintiffs think should be required, a so-called Section 10 permit, is (1) strictly voluntary; and (2) only available when actual death or injury of a protected species is reasonably

then that clearance work, and corresponding pipeline construction, cannot begin again until August, when the warblers migrate back south again. This six-month delay in the pipeline's construction would increase PHP's construction costs by $135 million, and cause it to suffer lost revenues on commercial and delivery contracts of approximately $32 million per month of delay.

***Efforts to Stop the Pipeline***

This case is the third lawsuit filed in Austin over the past ten months by Plaintiffs' law firm and an overlapping set of plaintiffs in an effort to halt the pipeline's construction under a variety of legal theories.  In April 2019, the Richards firm and its clients filed suit in Travis County District Court, claiming that the pipeline's construction violated Texas Railroad Commission regulations and the State's eminent domain statute. Judge Lora Livingston granted summary judgment in PHP's favor and entered a take-nothing judgment against the plaintiffs.

Then, on January 24, 2020, the Richards firm filed a lawsuit in this Court, claiming that the pipeline, which is entirely *intrastate*—beginning near Pecos, Texas, and ending near Columbus, Texas—has failed to comply with requirements of the Federal Energy Regulatory Commission that are applicable only to *interstate* pipelines. PHP and other defendants have filed motions to dismiss those claims, which remain pending.  And now, the Richards firm has filed this lawsuit, claiming that the Service's and Corps' procedures for granting approvals and exceptions for the pipeline's construction violate federal law.

---

certain to occur. *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 927 (9th Cir. 2000); Memorandum from Principal Deputy Director, FWS, to Regional Directors 1-8 at 2 (Apr. 26, 2018), https://www.fws.gov/endangered/esa-library/pdf/Guidance-on-When-to-Seek-an-Incidental-Take-Permit.pdf.

*Plaintiffs' Injunctive Requests*

At the close-of-business on Friday, February 7, 2020, Plaintiffs filed their application for preliminary injunction, accompanied by a 48-page memorandum of supporting arguments and authorities and 154 pages of exhibits. At this stage, even delaying the project for just a week or two, the result if Plaintiffs had sought and obtained a temporary restraining order, would make it impossible to clear the right-of-way in the potential warbler habitat counties before March 1, thereby delaying the pipeline's construction by at least six months, resulting in hundreds of millions of dollars in added costs and losses.

By Local Rule, PHP's Opposition to Plaintiffs' Application for Preliminary Injunction must be filed by midnight on Friday, February 14. Yet, in spite of the volume of their motion, memorandum and exhibits, and the enormous impact that injunctive relief would have upon PHP, Plaintiffs ask for the evidentiary hearing on their Application to be scheduled on an "emergency" basis, either before or on the day that PHP's Opposition to that Application is due. The Court should decline their invitation.

*Defendants are entitled to adequate time and a fair opportunity*

"A preliminary injunction is an extraordinary remedy." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). Unlike a TRO, Federal Rule of Civil Procedure 65(a)(1) requires that preliminary injunctions may only be issued "on notice to the adverse party." The Fifth Circuit has interpreted Rule 65(a)(1) to mean, that "where factual disputes are presented, the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Commerce Park at DFW Freeport v. Mardian Construction Co.*, 729 F.2d 334, 342 (5th Cir. 1984)).

Plaintiffs' three-paragraph argument for an "emergency" hearing is insufficient to accelerate scheduling of a hearing on the extraordinary remedy they seek. PHP looks forward to presenting evidence and arguments in opposition to Plaintiffs' Application for Preliminary Injunction. In fact, PHP intends to ask the Court for several hours of time to present live witnesses and corresponding argument.

Plaintiffs' real quarrel in this lawsuit is that they do not agree with how the federal agencies implement the Endangered Species Act; the core of this case is a challenge to federal agency action. But, through an extensive process, the federal government has assessed the very impacts of concern to Plaintiffs and has, or will, conclude its process under applicable federal law. As part of that process, the Service issued a biological opinion ("BiOp") as required by the Endangered Species Act, stating it "does not expect, directly or indirectly, that the [PHP] project will reduce appreciably the likelihood of both the survival and recovery of the [golden-cheeked warbler] in the wild by reducing the reproduction, numbers, or distribution of [golden-cheeked warbler]." Exhibit A at 48-49. This, in part, because PHP agreed to clear potential golden-cheeked warbler habitat, as determined by the Service, before March 1, which is the earliest date mating season may begin. Despite the Service's 64-page analysis of the pipeline under the Endangered Species Act, Plaintiffs claim that their own private assessment is superior and barely even acknowledge the existence of the February 3 Biological Opinion, issued by the expert agency charged with implementation of the ESA, which contradicts their own conclusions in every respect.

Though Plaintiffs only seek injunctive relief against PHP, the four federal defendants should be served, allowed to enter appearances, and potentially have an opportunity to weigh in at any hearing—preliminary or otherwise. Plaintiffs' claim is that the process the federal agencies followed to evaluate the impacts of concern to Plaintiffs was unlawful and that the protections

afforded to Defendants under the Endangered Species Act are illegal, causing Defendants to allegedly be in violation of that statute. Further, Plaintiffs seek to enjoin PHP from engaging in certain actions unless and until the Service completes a National Environmental Policy Act ("NEPA") review of permits. Yet NEPA is *solely* a federal obligation and the Court should allow the federal defendants to appear before any hearing on Plaintiffs' claims that inherently implicate federal interest. Given that the heart of this case is the validity of actions taken by federal agencies, those agencies should have the opportunity to engage in resolution of Plaintiffs' claims.

Moreover, Plaintiffs have filed 48 pages of factual claims and legal analysis, along with 154 pages of witness declarations and other exhibits. Plaintiffs' filing demonstrates the complexity of the subject matter at hand and the long procedural record of PHP securing required permits and approvals from many different government authorities. It would be inequitable to proceed to a hearing on an "extraordinary remedy" before Defendants have their seven days to respond under Local Rule CV-7(e). *See Chapman v. Pennsylvania Interscholastic Athletic Ass'n*, No. 1:14-CV-00192, 2014 WL 580212, at *3 (M.D. Pa., Feb. 12, 2014) (mem. op.) (denying motion for expedited preliminary injunction hearing, finding "that holding an expedited hearing would prejudice Defendants by depriving them of adequate time to prepare briefing and argument on the preliminary injunction motion, or the opportunity to engage in discovery."); *Tebo v. Henderson*, No. CIV-A-00-40071-NMG, 2000 WL 1092274, at *2 (D. Mass., Aug. 1, 2000) (delaying any hearing on the preliminary injunction until opposing party had "adequate time to prepare therefor").

All parties and the Court should have adequate time to review both sides' briefing and prepare for what may be a day-long evidentiary hearing. Plaintiffs' proposed hearing timeline, which would inherently abridge Defendants' opportunity to submit fulsome briefing and evidence,

will deny Defendants a fair opportunity and a meaningful hearing to present their differing version of the facts.

\* \* \*

FOR THESE REASONS, Defendants Kinder Morgan Texas Pipeline, LLC and Permian Highway Pipeline, LLC request that the Court deny Plaintiffs' Motion for Emergency Hearing, and grant them such other relief to which they are entitled.

Dated February 9, 2020.                    Respectfully submitted,

/s/ W. Stephen Benesh
W. Stephen Benesh
Texas State Bar No. 02132050
steve.benesh@bracewell.com
BRACEWELL LLP
111 Congress Avenue, Suite 2300
Austin, Texas 78701
Tel.: 512.494.3680
Fax: 800-404-3970

Ann D. Navaro (*pro hac vice motion pending*)
ann.navaro@bracewell.com
Brittany M. Pemberton (*pro hac vice motion pending*)
brittany.pemberton@bracewell.com
BRACEWELL LLP
2001 M Street NW, Suite 900
Washington DC 20036
Tel: 202.828.5811
Fax: 800.404.3970

**Attorneys for Defendants Kinder Morgan Texas Pipeline, LLC and Permian Highway Pipeline, LLC**

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on February 9, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

    The undersigned further certifies that he caused a true copy of this document to be served on the following counsel via e-mail and USPS first class mail:

| | |
|---|---|
| Lynn E. Blais<br>Attorney at Law<br>Texas Bar No. 02422520<br>727 E. Dean Keeton Street<br>Austin, TX 78705<br>lblais@law.utexas.edu | Sherine E. Thomas<br>State Bar No. 00794734<br>Sharon K. Talley<br>State Bar No. 19627575<br>Tim Labadie<br>State Bar No. 11784853<br>TRAVIS COUNTY ATTORNEY'S OFFICE<br>P. O. Box 1748<br>Austin, Texas 78767<br>sherine.thomas@traviscountytx.gov<br>sharon.talley@traviscountytx.gov<br>tim.labadie@traviscountytx.gov |
| Renea Hicks<br>Attorney at Law<br>State Bar No. 09580400<br>LAW OFFICE OF MAX RENEA HICKS<br>P.O. Box 303187<br>Austin, Texas 78703-0504<br>rhicks@renea-hicks.com | |

                                          */s/ W. Stephen Benesh*
                                          W. Stephen Benesh