IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CITY OF AUSTIN,<br>CITY OF SAN MARCOS,<br>TRAVIS COUNTY,<br>HAYS COUNTY,<br>BARTON SPRINGS EDWARDS AQUIFER<br>CONSERVATION DISTRICT,<br>LARRY BECKER, ARLENE BECKER,<br>JONNA MURCHISON, AND<br>MARK WEILER<br><br>    Plaintiffs,<br><br>VS.<br><br>KINDER MORGAN TEXAS PIPELINE,<br>LLC, PERMIAN HIGHWAY PIPELINE,<br>LLC, UNITED STATES DEPARTMENT OF<br>INTERIOR, DAVID BERNHARDT, in his<br>Official Capacity as Secretary of Interior,<br>UNITED STATES FISH AND WILDLIFE<br>SERVICE and AURELIA SKIPWITH, in her<br>Official Capacity as Director of the U.S. Fish<br>and Wildlife Service,<br><br>    Defendants | §§§§§§§§§§§§§§§§§§§§§§§§§ | CASE NO. 1:20-cv-00138-RP<br><br><br>**Oral Argument Requested** |

**PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

COME NOW, Plaintiffs City of Austin, City of San Marcos, Travis County, Hays County, Barton Springs Edwards Aquifer Conservation District, Larry Becker, Arlene Becker, Jonna Murchison and Mark Weiler ("Plaintiffs") and respectfully request the Court to issue a temporary restraining order, as authorized under Rule 65(b) of the Federal Rules of Civil Procedure, until such time as the Court can hear and rule on Plaintiffs' Application for Preliminary Injunction (Dkt. 9). Plaintiffs have given notice of this TRO Application to the Kinder Morgan Defendants via the

ECF system and by email, and to the federal defendants by hand delivery to the U.S. Attorney for the Western District of Texas at 903 San Jacinto Blvd., Suite 334, Austin, Texas 78701.

1.  On February 7, 2020, Plaintiffs filed an opposed motion (Dkt. 11), requesting an emergency hearing on the Preliminary Injunction Application. The Court denied that motion on February 10, 2020 in part because the Court declined to set a preliminary injunction hearing before the deadline for Defendants to file a response opposing the application. (Dkt. 16). Under W.D. Tex. Loc. R. CV-7(e), such response is due to be filed by Friday, February 14, 2020.

2.  In support of this TRO Application, Plaintiffs rely on their Application for Preliminary Injunction, Dkt. 9, and Memorandum in Support of Plaintiffs' Application for Preliminary Injunction. Dkt. 10. In addition, Plaintiffs include an Appendix to this Application containing the declarations on which Plaintiffs rely to establish the facts of the likelihood of take under the Endangered Species Act ("ESA") and the imminence of irreparable injury to Plaintiffs if a temporary restraining order does not issue.

3.  In this case Plaintiffs challenge Kinder Morgan's plan to rush to construct the Permian Highway Pipeline ("PHP" of "Pipeline") through some of the most sensitive environmental features in the Texas Hill Country without engaging in the extensive public planning and review processes that Congress explicitly designed to protect these resources in the ESA and the National Environmental Policy Act ("NEPA"). Plaintiffs are local governmental entities, a groundwater conservation district, and affected landowners who have consistently objected to Kinder Morgan's precipitous rush to construct the pipeline without adequate process and protections for imperiled species and their essential, fragile habitat.

4.  The PHP is a proposed 430-mile natural gas pipeline, 42 inches in diameter, which is designed to transport about 2 billion cubic feet of natural gas per day. Current plans are to route

the PHP through the Central Texas Hill Country, traversing sensitive environmental features, including the Edwards and Trinity Aquifer recharge zones as well as habitat for many endangered species. This route entails destroying hundreds of acres of habitat for the endangered Golden-cheeked warbler ("warbler") and cutting and clearing through the Central Texas oak forest during the period when all relevant experts recommend against cutting or pruning oak trees to prevent the spread of Oak Wilt.

5. A temporary restraining order is an extraordinary remedy that is justified in this case by the extraordinarily short time-frame between when Kinder Morgan expects to receive authorization from the Corps (on or around February 14, 2020) to begin clearing and construction activities and when Kinder Morgan will be bound by the terms of that authorization to complete all clearing and construction work in warbler habitat (by March 1, 2020). *See* Dkt. 12 at 12. In the absence of a temporary restraining order, Plaintiffs will suffer irreparable harm, namely injury to their aesthetic, recreational, conservation, and incalculable financial interest in federally listed species and the irreplaceable water resources that depend on clean, clear water in the Edwards Aquifer. Furthermore, in the absence of a temporary restraining order, this Court's ability to render a judgment on the merits of Plaintiffs' substantial legal claims will be mooted.

6. The requested temporary restraining order is fully justified because Plaintiffs can clearly establish the four elements required for temporary or preliminary relief: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the temporary restraining order is denied; (3) that the threatened injury outweighs any damage that the temporary restraining order might cause the defendant; and (4) that the temporary restraining order will not disserve the public interest." *Jackson Women's Health Org. v. Currier*,

760 F.3d 448, 452 (5th Cir. 2014) (quoting *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998)); *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

### **Plaintiffs Are Likely to Prevail on the Merits of their ESA and NEPA Claims**

7. Plaintiffs are likely to prevail on the merits of their ESA and NEPA claims because Kinder Morgan is poised to take members of endangered species without a lawful Section 10 Incidental Take Permit ("ITP') required under the ESA, and a Section 10 ITP cannot be issued without NEPA review. Section 9 of the ESA makes it unlawful for any person to "take" any endangered species anywhere in the United States. 16 U.S.C. § 1538(a)(1)(B). The ESA broadly defines "take" to mean to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." *Id.* § 1532(19); *Babbitt v. Sweet Home Chapter of Comtys. for a Great Or.*, 515 U.S. 687, 704-05 (1995). In addition, "harm" in the definition of "take" is defined to include significant habitat modification or degradation that actually kills or injures wildlife by "significantly impairing essential behavioral patterns, including breeding, feeding or sheltering" and "harass" is defined as an act or omission that "creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include breeding, feeding, or sheltering." 50 C.F.R. § 17.3.

8. Only two narrow mechanisms provide a safe harbor from ESA take liability: a Section 10 Incidental Take Permit ("Section 10 ITP") available the U.S. Fish and Wildlife Service ("Service") for projects not dependent on a federal permit (and therefore lacking a federal action agency), 16 U.S.C. § 1539(a)(1)(B); or, for projects requiring a federal permit, an Incidental Take Statement ("ITS") resulting from a Section 7 consultation between the federal action agency and the Service. 16 U.S.C. § 1536(b)(4). Less than 5% of the PHP is directly subject to the jurisdiction of a federal permitting agency. Thus, for the remaining 95% or more of the pipeline, Kinder Morgan cannot

lawfully take a member of an endangered species unless it has a Section 10 ITP. Kinder Morgan does not have an ITP for incidental take of the warbler or the listed aquatic species at issue in this case. Therefore, any take that occurs during clearing and construction for the non-federal portion of the PHP (more than 95% of the PHP) will violate the ESA.

9. Clearing and construction in the Texas Hill Country will "undoubtedly" result in take of warblers and is "highly likely" to damage Barton Springs and adversely affect the quality and quantity of clear, clean water in the Edwards Aquifer and its recharge zone, which in turn could "cause irreversible impacts" on the Barton Springs salamander and the Austin blind salamander. The likelihood of unlawful take is fully explained in the declarations of Jennifer Blair, CWB, and Christopher Herrington, PE, contained in the Appendix, Exhibits 4 and 6. Blair concludes that "significant impairment to feeding, sheltering, and breeding activities will undoubtedly result in the actual death or injury to [warblers] through elimination of feeding and sheltering habitat, significant fragmentation of high quality habitat created by a 125-foot scar on the landscape, and the loss of reproductive success due to the elimination of breeding habitat, nesting areas, and nest abandonment due to disturbance related to construction, operation, and maintenance of the PHP." Appendix, Exhibit 4 at ¶7. Herrington concludes that "[t]he construction and operation of the PHP is highly likely to damage Barton Springs and the aquifer [and] [t]he harm outlined above to the springs as endangered species habitat is essentially irreversible if salamander populations decline below sustainable levels." Appendix, Exhibit 6 at ¶¶10, 11. Because Kinder Morgan does not have a valid Section 10 ITP, each and every take will violate the ESA.

10. Kinder Morgan's (and the Service's) attempt to treat a Section 7 ITS *as if it were* a Section 10 ITP without first undertaking NEPA review is a violation of NEPA. NEPA requires the preparation of an Environmental Impact Statement ("EIS") for all "major Federal actions

significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). The issuance of a Section 10 ITP that authorizes a project to proceed is a "major federal action" for purposes of NEPA. So too is the issuance of a Biological Opinion and accompanying ITS if those documents are the basis upon which the project is authorized to proceed. *See Ramsey v. Kantor*, 96 F.3d 434 (9th Cir. 1996) (holding that issuance of a BiOp and ITS is a major federal action because the project could not proceed without the ITS). Kinder Morgan cannot rely on the ITS to provide incidental take coverage for the non-federal portion of the PHP if the ITS and the Biological Opinion on which it is based have not been subject to NEPA review.

11. Under NEPA, an EIS must thoroughly discuss the environmental impacts of a proposed action, including direct, indirect effect and cumulative effects, and shall "rigorously explore and objectively evaluate all reasonable alternatives" to the proposed action. 40 C.F.R. § 1502.14. After preparing a draft EIS and before preparing a final EIS, the agency must request comments from State and local agencies authorized to develop and enforce environmental standards and also request comments from the public, "affirmatively soliciting comments from those persons or organizations who may be interested or affected." 40 C.F.R. § 1503.1(a)(4). The agency then must "assess and consider comments both individually and collectively" and state "its response in the final [EIS]." This notice and comment period for the preparation of the EIS is essential to its information-forcing role in agency decisions. 40 C.F.R. § 1503.3(a). Kinder Morgan and the Service's attempt to secure a safe harbor for the non-federal portions of the PHP—it is important to remember that this is more than 95% of the PHP—through a Section 7 ITS essentially treats the ITS as if it were a Section 10 ITP. But implementing a Section 10 ITP without NEPA review violates NEPA, and implementing a Section 7 ITS that is used as a Section 10 ITP is just as much a NEPA violation.

**Plaintiffs Will Be Irreparably Injured If A TRO Does Not Issue, and This Court's Jurisdiction to Rule on the Merits Will be Rendered Moot.**

12.     Plaintiffs will be irreparably injured if a temporary restraining order does not issue to prohibit Kinder Morgan from engaging in clearing and construction activities before this Court can hear and rule on Plaintiffs' Application for a Preliminary Injunction. Landowner Plaintiffs own property and homes in the proposed route of the PHP or adjacent to that route. Their property contains high quality warbler breeding habitat, including mature Ashe juniper trees and various oak and other native hardwood species. Landowner Plaintiffs enjoy bird watching – many have enjoyed sightings of endangered warblers on our property, and all landowner Plaintiffs hope to enjoy such sightings in the future. Some of the landowners are beekeepers and have organic gardens. All of the landowners have mature oak trees (some more than 150 years old) that will be vulnerable to the spread of Oak Wilt. The full extent and individual aspect of these Plaintiffs' irreparable injury is explained in their declarations in the attached Appendix, Exhibits 1-3. In general, though, landowner Plaintiffs will be irreparably injured by Kinder Morgan's clearing and construction activity because it will: a) destroy trees and other foliage of warbler habitat on their property or adjacent to the warbler habitat on their property, making it less likely that they will observe and enjoy endangered warblers in the future; b) increase the risk of spreading Oak Wilt on their property and destroying their oak trees, which cannot be replaced in their lifetimes; c) create a risk of a leak or explosion that affects their safety as well as the safety of their homes and water wells, and potentially trapping some Plaintiffs on their property with no way out, the economic impact of which is incalculable; d) risk the spread of herbicides from the PHP right of way maintenance to their property, endangering the health and life of some Plaintiffs' bee colonies and the integrity of their organic garden; and e) diminish the market value of their homes and land, as well as the peace and enjoyment of their retirement years, due to the pipeline's proximity.

13.     Plaintiffs City of Austin, City of San Marcos, Travis County and Hays County are home rule cities in Texas and Texas counties. These local governments have spent hundreds of millions of dollars over the past several decades preserving land and water resources for their residents and visitors. These resources provide endangered species habitat, sources of drinking water, and land and water-based recreation opportunities that are of incalculable value to the cities and counties. The full extent of the irreparable injury to these governmental entities and their residents is explained in the declarations in the attached Appendix, Exhibits 6, 7, 10, 11 and 12. But the incalculable costs of Kinder Morgan's actions are well captured in the conclusions of Jodi Jay, Division Manager of the Austin Parks and Recreation Departments Aquatic Division, and Rebecca Ybarra, Director of the Convention and Visitor Bureau for the City of San Marcos. Ms. Jay states, "[i]t is not possible to calculate in monetary [terms the] damage that would be done to the City if Barton Springs Pool is contaminated by the construction activities of the pipeline." Appendix, Exhibit 11 at ¶6. Ms. Ybarra states, "[i]t is not possible to calculate in monetary terms the damage that would be done to the City if [San Marcos] springs and [the San Marcos] river are contaminated by the construction activities of the pipeline. . . . [T]he threat to the City's interests, especially in terms of recreational opportunities for its residents and visitors, is great and incalculable." Appendix, Exhibit 7 at ¶6.

14.     Moreover, without a temporary restraining order, Kinder Morgan will rush to complete its clearing and construction activity in the Texas Hill Country, undermining this Court's ability to render a meaningful judgment. *See Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).

### The Irreversible and Incalculable Harm to Plaintiffs and Endangered Species Outweighs any Temporary Harm that a TRO will Cause to Kinder Morgan

15.    Kinder Morgan is in a hurry to destroy hundreds of acres of habitat for the endangered warbler and adversely impact thousands more acres *in the next 20 days*. But time pressures of Kinder Morgan's own making cannot outweigh the timeless interest in protecting and preserving endangered species, especially where courts have uniformly recognized that self-inflicted injuries cannot avoid the imposition of equitable relief. *See, e.g.*, *Long v. Robinson*, 432 F.2d 977, 981 (4th Cir. 1970) (finding it "elementary that a party may not claim equity in his own defaults"); *Fund for Animals v. Norton*, 294 F. Supp. 2d 92, 116-117 (D.D.C. 2003) (refusing to grant equitable relief where party's actions were "disingenuous at best," and finding that "any economic or emotional harm . . . falls squarely on the defendants' shoulders").

16.    Moreover, as the Supreme Court has made clear, where violations of the ESA are concerned, such countervailing economic considerations are irrelevant:

> [T]he plain language of the [ESA], buttressed by its legislative history, shows clearly that Congress viewed the value of endangered species as "incalculable." Quite obviously, it would be difficult for a court to balance the loss of a sum certain –even $ 100 million—against a congressionally declared "incalculable" value, *even assuming we had the power to engage in such a weighing process, which we emphatically do not.*
> *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 187–88 (1978) (emphasis added)

### A Temporary Restraining Order Will Serve the Clearly Established Public Interest in Preserving Endangered Species and their Habitat.

17.    The final factor in considering whether to grant preliminary relief is whether the injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20, (2008). Here, the public interest tips very heavily in favor of preserving the status quo in order to conserve endangered species and their habitat, and to subject Kinder Morgan's proposed pipeline project to full, comprehensive, public review, as required by the ESA. As courts have consistently

recognized, Congress itself has determined that the "balance of hardships and the public interest tip heavily in favor of endangered species." *Sierra Club v. Marsh*, 816 F.2d 1376,1383 (9th Cir. 1987); see also *Strahan v. Coxe*, 127 F.3d 155, 160 (1st Cir. 1997), *cert. denied*, 525 U.S.830 (1998) ("[U]nder the ESA . . . the balancing and public interest prongs have been answered by Congress."); *Animal Prot. Inst. v. Martin*, 511 F. Supp. 2d 196, 197 (D. Me. 2007) (finding that the balance of hardships "tips heavily in favor of the protected species"). That alone underscores the public interest in a TRO in this case.

18.  Moreover, granting a TRO would allow the Court to maintain the status quo pending a fuller examination of Plaintiffs' substantial claims at a preliminary injunction hearing and on the merits. This serves the public's overriding interest in endangered species and the essential habitat necessary to sustain and recover them. *See Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 326-27 (D.C. Cir. 1987) (affirming that injunction was in the public interest to "protect against further illegal action pending resolution of the merits" and to "protect[] the environment from any threat of permanent damage"). Finally, the public has a substantial interest in ensuring that entities such as Kinder Morgan comply with federal environmental laws *before* taking actions that irreversibly impact the environment. *See, e.g.*, *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 26 (D.D.C. 2009) (granting preliminary injunction and finding that "[t]here is no question that the public has an interest in having Congress' mandates in [environmental statutes] carried out accurately and completely").

19.  Given the urgency of this matter, Plaintiffs request a hearing for presentation of oral argument on this application for temporary restraining order as soon as reasonably possible in order for the emergency relief to be granted before Kinder Morgan begins its clearing activities.

20. In the event the Court issues a temporary restraining order, Plaintiffs—local governmental entities and local landowners—respectfully request that the Court require no bond, or, at most, a nominal bond. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) ("In holding that the amount of security required pursuant to Rule 65(c) 'is a matter for the discretion of the trial court,' we have ruled that the court 'may elect to require no security at all.'") (*quoting and citing Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302-03). Courts routinely require no bond or only a minimal bond (i.e., $500 or less) in environmental cases of this kind that seek to advance the public interest. See, e.g., *Save Strawberry Canyon v. Dep't of Energy*, 613 F. Supp. 2d 1177, 1191 (N.D. Cal. 2009) (ordering no bond). The same outcome is appropriate in this case.

Respectfully submitted,

*/s/ Clark Richards*
Daniel R. Richards
State Bar No. 00791520
drichards@rrsfirm.com
Clark Richards
State Bar No. 90001613
crichards@rrsfirm.com
RICHARDS RODRIGUEZ & SKEITH, LLP
816 Congress Ave, Suite 1200
Austin, TX  78701
Tel: 512-476-0005

*/s/ Lynn E. Blais*
Lynn E. Blais*
Attorney at Law
Texas Bar No. 02422520
727 E. Dean Keeton Street
Austin, TX 78705
(512) 653-5987
lblais@law.utexas.edu
* *Motion for admission pro hac vice pending*

*/s/ Renea Hicks*
Renea Hicks
Attorney at Law
State Bar No. 09580400
LAW OFFICE OF MAX RENEA HICKS
P.O. Box 303187
Austin, Texas 78703-0504
(512) 480-8231
rhicks@renea-hicks.com

**ATTORNEYS FOR PLAINTIFFS**

**DAVID A. ESCAMILLA**
**TRAVIS COUNTY ATTORNEY**
P. O. Box 1748
Austin, Texas 78767
(512) 854-9415
(512) 854-4808 FAX

By: */s/ Sherine E. Thomas*
Sherine E. Thomas
Assistant County Attorney
State Bar No. 00794734
sherine.thomas@traviscountytx.gov
Sharon K. Talley
Assistant County Attorney
State Bar No. 19627575
sharon.talley@traviscountytx.gov
Tim Labadie
Assistant County Attorney
State Bar No. 11784853
tim.labadie@traviscountytx.gov
**ATTORNEYS FOR PLAINTIFF**
**TRAVIS COUNTY**

## **CERTIFICATE OF SERVICE**

  This is to certify that on February 11, 2020, a true and correct copy of the above and foregoing document was filed via the Court's ECF/CM system and will be served as follows:

| | |
|---|---|
| W. Stephen Benesh<br>David B. Springer<br>111 Congress Avenue, Suite 2300<br>Austin, Texas 78701-4061<br>***Via ECF/CM Notification and***<br>***Email:*** *steve.benesh@bracewell.com*<br>*david.springer@bracewell.com* | *Ann D. Navaro*<br>*Brittany Pemberton*<br>*BRACEWELL LLP*<br>*2001 M Street NW, Suite 900*<br>*Washington, DC 20006*<br>***Via Email:*** *ann.navaro@bracewell.com*<br>*Brittany.pemberton@bracewell.com* |

John F. Bash, U.S. Attorney
for the Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
***Via Hand Delivery***

              */s/ Clark Richards*
              **CLARK RICHARDS**

# APPENDIX

**Exhibit 1**     Declaration of Larry Becker

**Exhibit 2**     Declaration of Jonna Murchison

**Exhibit 3**     Declaration of Mark Weiler

**Exhibit 4**     Declaration of Jenny Blair

**Exhibit 5**     Declaration of David Vaughan

**Exhibit 6**     Declaration of Christopher Herrington

**Exhibit 7**     Declaration of Rebecca Ybarra

**Exhibit 8**     Notice of Intent to Sue, dated 7/17/2019

**Exhibit 9**     Notice of Intent to Sue, dated 10/16/2019

**Exhibit 10**    Notice of Intent to Sue, dated 5/14/2019

**Exhibit 11**    Declaration of Jodi Jay

**Exhibit 12**    Declaration of Lon A. Shell